## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| LIBERTY ROAD HOLDINGS LP ET AL., | * |
| Plaintiffs, | * |
| v. | * |
| THE TRAVELERS INDEMNITY COMPANY ET AL., | * Civil No. 24-2098-BAH |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Liberty Road Holdings LP ("Liberty Road") and Threadneedle Baltimore II LP ("Threadneedle") (collectively "Plaintiffs") brought suit against The Travelers Indemnity Company ("Travelers") and Liberty Marriotts Lane, LLC ("Marriotts Lane") (collectively "Defendants") alleging breach of contract claims against Travelers (Counts I and II) and Marriotts Lane (Count IV), failure to act in good faith under § 3-1701(d)(2) of the Courts and Judicial Proceedings Article of the Maryland Code against Travelers (Count III), and requesting a declaratory judgment in accordance with 28 U.S.C. § 2201 (Count V). ECF 33 (amended complaint).[1] On September 3, 2025, the Court denied Marriotts Lane's motion to dismiss and granted in part and denied in part Travelers' motion to dismiss. *See* ECF 50 (memorandum opinion); ECF 51 (implementing order). On September 17, 2025, Liberty Road filed a motion for reconsideration of the Court's reasoning in Section III.B.1.ii of the memorandum opinion, ECF 56, which relates to Travelers' motion to dismiss Count I of the amended complaint. Travelers

---

[1] The original complaint is docketed at ECF 1.

has filed an opposition, ECF 57, and Liberty Road has filed a reply, ECF 61. All filings include memoranda of law.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Liberty Road's motion for partial reconsideration is **DENIED**. Count I of the amended complaint survives Travelers' motion to dismiss for the same reasons articulated in the prior memorandum opinion.

## I.    BACKGROUND

Because the motion for partial reconsideration concerns itself only with Count I of the amended complaint, the Court assumes general familiarity with the facts and discusses only the background necessary for deciding the pending motion. In Count I of the amended complaint, Liberty Road asserts a breach of contract claim against Travelers arising out of a commercial property insurance policy (the "Policy") that was originally issued to MCB Real Estate, LLC ("MCB"). ECF 50, at 2.

The Policy insures, among other properties, 8212 Liberty Road, Baltimore, MD 21244 (the "Property"), for which MCB served as property manager. *Id.* In December 2022, Liberty Road, in addition to other parties, entered into a settlement agreement (the "Settlement Agreement") with Marriotts Lane arising from litigation in state court related to a sublease of the Property. *Id.* at 2–3. Pursuant to a term of the Settlement Agreement, Marriotts Lane executed an agreement with Liberty Road which assigned to Liberty Road "all of [Marriotts Lane's] claim and right to any proceeds under its insurance policy" related to loss and damage resulting from a theft that occurred at the Property in October of 2022. *Id.* at 3 (quoting ECF 48-1, at 27).

The amended complaint alleges that, after the assignment, Marriotts Lane informed Travelers that it had assigned its insurance claim related to that theft to Liberty Road, and it

---

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

instructed Travelers to communicate with Liberty Road going forward. *Id.* Plaintiffs also allege that in January 2023, Liberty Road likewise informed Travelers of the assignment and identified itself as the new owner of the Property. *Id.* Throughout 2023, Travelers considered the claim, requesting photographs and additional documentation. *Id.* But in 2024, Travelers informed Liberty Road that it had determined Liberty Road was not an insured and therefore was not entitled to coverage. *Id.* In March 2024, Travelers ultimately denied the claim. *Id.* at 4.

In its motion to dismiss, Travelers argued that Liberty Road's breach of contract claim in Count I must fail because it arises from the assignment of a post-loss claim barred by an anti-assignment clause in the Policy.[3] *Id.* at 23 (citing ECF 36-1, at 10–15). Indeed, the Policy contains an anti-assignment clause that states "[t]he Insured's rights and duties under this policy may not be transferred without the written consent of the Company except in the case of death of an individual Named Insured." *Id.* at 2 (quoting Ex. 2, at 87–88). In its briefing on the motion to dismiss, Travelers argued that a decision of the Appellate Court of Maryland, *In re Featherfall Restoration LLC*, 311 A.3d 437 (Md. App. 2024), supported reading the anti-assignment clause in the Policy to prohibit the post-loss assignment of a claim that occurred in this case. *See id.* at 23. At the time this Court decided the motion to dismiss, however, the Supreme Court of Maryland had overturned the intermediate appellate court's decision in *Featherfall*, and so this Court evaluated Travelers' arguments under new controlling precedent. *See id.*; *see also Matter of Featherfall Restoration, LLC*, 340 A.3d 237 (Md. 2025).

---

[3] Travelers also argued in its motion to dismiss that Liberty Road did not have contractual standing to assert its breach of contract claim. *See* ECF 50, at 20 (citing ECF 36-1, at 8–10). However, for the reasons stated in the Court's prior opinion, Liberty Road plausibly alleged its contractual standing in the amended complaint. *See id.* at 20–23.

3

As the Court explained in its prior opinion, the anti-assignment clause at issue in *Featherfall* prohibited assignment of a "policy." *Id.* at 23–24. The Supreme Court of Maryland, recognizing that "policy" and "claim" are distinct terms in the insurance context, concluded that the clause before it did not prohibit the assignment of a single post-loss *claim*. *Id.* at 24. This Court observed that the anti-assignment clause at issue in this case used different language than that of the policy considered in *Featherfall*, and further observed that Plaintiffs had not argued "that the text of the Policy's anti-assignment clause fails to reach the claim assigned here" or that the clause was "unenforceable as a matter of Maryland public policy." *Id.* Instead, Plaintiffs attempted to negate the clause's application only "by contending that Travelers either (1) waived its right to enforce the anti-assignment clause or (2) is estopped from invoking that clause here because of its communications with Marriotts Lane and Plaintiffs about the claim prior to the commencement of this litigation." *Id.* The Court concluded that at the motion to dismiss stage, Liberty Road had plausibly alleged that Travelers waived its right to enforce the anti-assignment clause, and Count I survived the motion to dismiss on that basis. *See id.* at 25–28.

Of course, Liberty Road does not disagree with the Court's ultimate conclusion that Count I should survive Travelers' motion to dismiss. Instead, Liberty Road asks the Court to reconsider its reasoning as to why the breach of contract claim should survive by presenting a new argument about the anti-assignment clause's text and scope. *See* ECF 56.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 54(b) provides that when "any order or other decision, however designated, . . . adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties," such an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Stated differently, "[w]hen a district court has entered an interlocutory order 'that adjudicates fewer than

4

all of the claims,' it retains the discretion to revise that order under Rule 54(b), 'at any time before the entry of a judgment adjudicating all the claims.'"[4] *Chavez-Deremer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 414 (4th Cir. 2025) (quoting Fed. R. Civ. P. 54(b)).

However, the Fourth Circuit "has emphasized that a court's discretion under Rule 54(b) 'is not limitless.'" *Id.* (quoting *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)). The Fourth Circuit has "narrowed" the application of Rule 54(b) to run parallel to the circumstances in which a district court may depart from the law of the case, "includ[ing] '(1) a subsequent trial produc[ing] substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" *Id.* (quoting the same). "This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of 'new evidence not available at trial.'" *Carlson*, 856 F.3d at 325 (quoting *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

"A Rule 54(b) motion to reconsider an interlocutory ruling is thus not a 'vessel' for the losing party to submit evidence that it could have presented earlier." *Chavez-Deremer*, 147 F.4th at 414 (quoting *Carlson*, 856 F.3d at 325). "Even a showing that 'legal precedent could support an alternative resolution' is insufficient for an award of relief under Rule 54(b)." *Id.* (citing *Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, No. 20-2319, 2022 WL 12324609, at *6 (4th Cir. Oct. 21, 2022)). Indeed, the Fourth Circuit has before observed that "Rule 54(b) requires that a challenged decision be so 'dead wrong' that it 'strike[s] us as wrong with the force of a five-

---

[4] Liberty Road seeks limited reconsideration of the Court's partial denial of Travelers' motion to dismiss, which is an interlocutory order. *See Tso v. United States*, No. 122CV00511MSNJFA, 2024 WL 561837, at *2 (E.D. Va. Feb. 8, 2024) ("The denial of a motion to dismiss is an interlocutory order." (first citing *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013); and then citing *Orbcomm Inc.*, 215 F. Supp. 3d at 503)).

week-old, unrefrigerated dead fish.'" *Id.* (alteration in original) (quoting *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC,* 899 F.3d 236, 258 (4th Cir. 2018)).

III.   **ANALYSIS**

Liberty Road primarily argues that the Court should reconsider its reasoning as to Count I based on a change in controlling law, specifically the Supreme Court of Maryland's decision in *Matter of Featherfall Restoration, LLC,* 340 A.3d 237 (Md. 2025). *See* ECF 56-1, at 3. There are two major problems with Liberty Road's reliance on that justification for reconsideration.

First, the Supreme Court of Maryland's decision in that case is not a "change" in controlling law, as evidenced by the analysis of *Featherfall* in this Court's prior memorandum opinion. The Supreme Court of Maryland decided *Featherfall* on July 24, 2025, forty-one days before this Court issued its opinion on the motion to dismiss at issue.[5] Indeed, this Court recognized the Supreme Court of Maryland's decision in *Featherfall* in its prior opinion and engaged with its reasoning. *See* ECF 50, at 23–24; *cf.* ECF 57, at 3 ("[W]hile the *Featherfall II* opinion was rendered between the filing of said memoranda and this Court's opinion on Travelers' Motion to Dismiss, this Court fully considered *Featherfall II* in its opinion."). In circumstances where new, relevant authority is issued after briefing on a motion is complete but before a decision has been issued on the motion, litigants often file a notice of supplemental authority. *See, e.g., Thompson v. United States,* 585 F. Supp. 3d 809, 811 (E.D. Va. 2022). Liberty Road did not file any such notice in this case.

The second complication for Liberty Road is that the "change" in controlling law to which it points appears to make the law equally or more uncertain as to the new argument Liberty Road presents. *Cf.* ECF 57, at 1 (framing Liberty Road's motion as "a request that this Court *change*

---

[5] Additionally, months before the first motion to dismiss was filed, the Supreme Court of Maryland granted certiorari in *Featherfall. See Matter of Featherfall Restoration LLC,* 317 A.3d 913 (Md. 2024) (issued on June 17, 2024). Prior briefing also identified that certiorari had been granted. *See* ECF 37-2, at 7 n.4; ECF 42, at 3.

6

Maryland law"). The briefing on the prior motion to dismiss revolved in part around the Appellate Court of Maryland's now reversed decision, which stated in relevant part that "Maryland enforces anti-assignment clauses and that such clauses prohibit assignments *regardless of whether they were made before or after a loss* under an insurance policy." ECF 50, at 23 (emphasis added) (quoting *In re Featherfall Restoration LLC*, 311 A.3d 437, 461 (Md. App. 2024)). It is true that the Appellate Court's statement suggested that *timing* did not matter for purposes of the enforcement of an anti-assignment clause under Maryland law. *See In re Featherfall Restoration LLC*, 311 A.3d at 461. But it did *not* say that the text of an anti-assignment clause did not matter for purposes of enforcement. To the contrary, the intermediate appellate court emphasized the importance of analyzing the ordinary meaning of words used in insurance contracts. *In re Featherfall Restoration LLC*, 311 A.3d at 451–52. It does not appear to the Court that Liberty Road was precluded in its prior briefing by the then-controlling precedent from advancing an argument about the *text* and scope of the anti-assignment clause at issue here. *See* ECF 57, at 3 n.3 ("Plaintiff, however, did not 'argue that the text of the Policy's anti-assignment clause fails to reach the claim assigned here,' something it could and should have previously argued but now argues."); ECF 61, at 1 (stating that Liberty Road "not seeking a 'blanket finding' about 'all post assignments' from this Court").

More to the point, the Supreme Court of Maryland's decision in *Featherfall* does not firmly resolve whether the Appellate Court of Maryland's prior statement about post-loss assignment was correct. Rather, the Supreme Court of Maryland's decision turned on the text of the anti-assignment clause before it and, in particular, the distinction between the words "policy" and "claim." *See Featherfall*, 340 A.3d at 244; ECF 56-1, at 7 ("As the Supreme Court of Maryland recognized, the precise language of an insurance policy's anti-assignment clause is critical to

7

determining what is and is not encompassed by the clause."). The opinion has little to say about the distinction between pre- and post-loss assignments under Maryland law generally, except that evaluating the existence of any such distinction was relevant to the Maryland Insurance Administration Commissioner's and Appellate Court's reasoning. *See Featherfall*, 340 A.3d at 241–42. But that was distinctly *not* the reasoning upon which the Supreme Court of Maryland's holding turned. *See Featherfall*, 340 A.3d at 247 ("[W]e hold that the anti-assignment clause, which prohibits an assignment of the policy but not claims arising under the policy, did not invalidate the Assignment."). Thus, Liberty Road's suggestion that "[t]he Supreme Court of Maryland's opinion in *Featherfall* restored Maryland's distinction between pre- and post-loss assignments" is far from a foregone conclusion. ECF 56-1, at 4.

To the contrary, dicta in *Featherfall* regarding the language of other anti-assignment clauses that have come before that court appears to support a text-focused approach to such clauses, rather than a focus on the status of the claim (pre- or post-loss) at issue. For example, the Supreme Court of Maryland distinguished two of its prior cases in *Featherfall*—*Michaelson* and *Clay*— "both of which involved post-loss assignments that were rendered void by anti-assignment clauses." 340 A.3d at 242; *see also* ECF 50, at 24. In distinguishing both cases, the court stated that the clauses at issue there had "prohibited the assignment of not only the policies but also any 'benefits' or 'interest' thereunder," so "the assignees in *Michaelson* and *Clay* were forced to make different arguments" than those advanced in *Featherfall* about the text of the clause, such as an argument based on public policy. *Featherfall*, 340 A.3d at 247. Although neither *Michaelson* and *Clay* nor *Featherfall* required the Supreme Court of Maryland to actually interpret the words "benefits" or "interest" in an anti-assignment clause, the court observed in *Featherfall* that those clauses were "broad." *Id.* Accordingly, the court observed that in both *Michaelson* and *Clay*, "the

beneficiaries did not contend, nor could they have credibly contended based on the express language of the anti-assignment clauses, that the clauses did not apply to their assignments by their plain terms."[6] *Id.*

The Court has serious doubts about whether the Supreme Court of Maryland's decision in *Featherfall* is supportive of Liberty Road's newly raised contentions about the text and scope of the anti-assignment clause at issue here.[7] Certainly, the Court does not, in reviewing its prior opinion, now smell "a five-week-old, unrefrigerated dead fish." *Chavez-Deremer*, 147 F.4th at 414 (citation omitted).[8] At most, Liberty Road has shown "that 'legal precedent *could* support an

---

[6] Appearing to refer to this Court's prior opinion, Liberty Road states that "[b]ecause the clauses in *Michaelson* and *Clay* were found to not bar post-loss claim assignments of 'benefits' or 'interests,' the Court reasoned that the anti-assignment clause at issue here also applies to post-loss claims." ECF 56-1, at 7 (quoting ECF 50, at 24). The Court disagrees with Liberty Road's characterization of its opinion. The Court merely acknowledged what the Supreme Court of Maryland said about those two cases in its opinion. *See* ECF 50, at 24. It did not reason that the "clause at issue here also applies to post-loss claims" based on the Supreme Court's precedents in *Michaelson* and *Clay* because it was not presented with arguments about the text and scope of this anti-assignment clause.

[7] Liberty Road now argues that the phrase "rights and duties under this policy" in the Policy's anti-assignment clause does not encompass the assignment of a post-loss claim. *See* ECF 56-1, at 2–3. But Liberty Road acknowledges that "no Maryland case has analyzed the enforceability of an anti-assignment provision with this language." *Id.* at 7. The Court, without any Maryland precedent on point, would be required to take the first pass at this question if it were to grant Liberty Road's motion for reconsideration. That ask is a far cry from correcting an erroneous prior decision.

[8] It should be noted that commenting on the "dead fish" language specifically, the Fourth Circuit recently cast doubt on "the appropriateness of such a high bar" for clear error under Rule 54(b) on account of "the inflexibility to which it condemns district courts when they realize they have made legal errors." *Clear Touch Interactive, Inc. v. Ockers Co.*, No. 25-1304, 2026 WL 888830, at *10 n.6 (4th Cir. Apr. 1, 2026). But the Fourth Circuit could only cast doubt on the matter, and its brief discussion had no bearing on the resolution of that case because there "the original district court opinion was not only wrong but 'dead wrong.'" *Id.*; *see also United States v. Henry*, 11 F. App'x 350, at *1 (4th Cir. 2001) (per curiam) ("[B]oth the district courts of this circuit and subsequent panels of this court are obliged to follow a decision of this court until it has been overruled by the Supreme Court or a decision by this court en banc."). Regardless, even if this

9

alternative resolution'" of the count at issue. *Id.* But as the Fourth Circuit has held, that showing alone is insufficient to justify reconsideration under Rule 54(b). *See id.* Accordingly, the Court will not reconsider its prior conclusion that "the Supreme Court of Maryland's decision in *Featherfall* does not interfere with the application of the anti-assignment clause at bar." ECF 50, at 24. Liberty Road's motion for reconsideration is therefore denied.

In the alternative of the Court's reconsideration of the issue in its favor, Liberty Road contends that "discovery should be permitted with respect to the anti-assignment clause's meaning." ECF 56-1, at 11. The Court concludes that it is premature to rule on any questions related to the scope of discovery in this matter. "Unless otherwise ordered by the Court or agreed upon by the parties, . . . discovery shall not commence and disclosures need not be made until a scheduling order is entered." Loc. R. 104.4 (D. Md. 2025). Although Defendants have answered the amended complaint, a scheduling order has not yet been entered on account of Liberty Road's pending motion for reconsideration and so discovery has not yet commenced. If issues regarding the scope of discovery arise, they will be dealt with in due course. As a reminder, this Court places great priority on requiring counsel to make good faith efforts to resolve disputes before this Court will involve itself in discovery matters. *See, e.g.,* Loc. R. 104.7 (D. Md. 2025) ("Counsel shall confer with one another concerning a discovery dispute and make a reasonable effort to resolve the differences between them.").

---

more recent precedent were read to reduce the degree of malodorousness required for revision of an earlier decision, the Court here still fails to detect any foul scent at all.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Liberty Road's motion for reconsideration will be **DENIED**. Count I of the amended complaint survives for the same reasons articulated in the prior memorandum opinion.

A separate implementing order will issue.

Dated: <u>April 23, 2026</u>

_____/s/_____

Brendan A. Hurson
United States District Judge

11